JOHN MAZUKIEWICZ, Plaintiff, v. THE HANOVER NATIONAL BANK OF THE CITY OF NEW YORK, Defendant.

Supreme Court, Kings County, January, 1924.

Banks and banking — foreign exchange — drafts presented for payment three months after receipt — existing war conditions in Europe deemed to justify conclusion drafts were presented within reasonable time — when plaintiff not obligated to give notice of dishonor — Negotiable Instruments Law, §§ 185, 267 — custom of handling foreign exchange not binding on plaintiff — plaintiff's motion for direction of verdict granted.

A bank that draws and sells a foreign draft engages with the purchaser that the draft will be paid upon due presentment.

The original of two drafts, drawn in duplicate, by defendant in July, 1914, on the banking house of one S. at Lomza, Russia, were mailed to the payee, plaintiff's father, who resided in Poland, about two miles from the German border line. The duplicates were retained by plaintiff who arrived at the residence of his father on July 23, 1914. As the result of Germany's declaration of war against Russia in August, 1914, the post office was closed and upon its reopening about six weeks later the original drafts were received and indorsed by plaintiff's father to plaintiff, who in October, 1914, presented them to the bank upon which they were drawn and payment demanded but refused. The reason why the drafts were not presented earlier was that Lomza was seventy-five miles away and "Germany was in Russia." In an action to recover the amount paid for the drafts at defendant's bank in New York city, with interest, the evidence, having in mind the then existing war conditions, justified the conclusion that the drafts were presented within a reasonable time after they had been received.

The defendant neither proved nor attempted to prove that it had an account with S.'s bank or that it had funds on deposit to meet the drafts upon presentment, and plaintiff testified that when they were presented he was advised by S. that he had been instructed by defendant not to honor the drafts until after the war. Held, that under sections 185 and 267 of the Negotiable Instruments Law, assuming that plaintiff's testimony was true, he was under no obligation to give notice of dishonor.

The claim was also made that since defendant had no funds on deposit plaintiff was relieved of the obligation to give notice of dishonor by section 185(4) of the Negotiable Instruments Law, but the defendant claimed that the fact that it had sufficient funds with a bank in Warsaw to meet the drafts and that it had

instructed said bank to transfer funds or otherwise arrange to have the drafts in question paid, discharged its obligation to the plaintiff, but there was no evidence that plaintiff parted with his money with knowledge of such custom. *Held,* that the method of carrying on the business of foreign exchange being merely for the convenience of the bankers, was not binding upon plaintiff, and there will be a finding that notice of dishonor was dispensed with herein.

Whether or not the drawee advised the plaintiff that payment had been stopped by defendant was not material if the defendant did not have funds in the hands of the drawee, and upon a finding that the defendant did not have funds on deposit to meet the drafts when presented, plaintiff's motion for the direction of a verdict in his favor will be granted, and defendant's motion to strike out the plaintiff's testimony as to his conversation with S. will be denied.

ACTION to recover purchase price of foreign drafts.

*Frueauff, Robinson & Sloan (Robert S. Sloan,* of counsel), for plaintiff.

*Percy S. Dudley,* for defendant.

HAGARTY, J. In July, 1914, the plaintiff purchased from the defendant bank, in New York, two drafts, one for 10,000 rubles and the other for 5,000 rubles, for which he paid the sum of $7,725. The drafts were issued by the defendant in duplicate to the plaintiff's father, Andrzej Mazukiewicz, and were drawn on the banking house of Gebruder Szarkanski, at Lomza, Russia. For the purpose of facilitating payment, the drafts were issued in the name of the plaintiff's father, because the father was known in Lomza, and the plaintiff was not. The original drafts were mailed to the payee, therein named, who resided at Ripchisnia, Poland, and the duplicates were retained by the plaintiff. On July 11, 1914, plaintiff left for Ripchisnia, Poland, where he arrived on July 23, 1914. Ripchisnia is about two miles from the German border line. In August, 1914, war was declared by Germany upon Russia, as a result of which the post office was closed. After a period of about six weeks, the post office was reopened, and the original drafts were then received and indorsed by plaintiff's father to the plaintiff. In October, 1914, the plaintiff, accompanied by his father, went to the Szarkanski Bank, at Lomza, Russia, presented the drafts, and demanded payment. Plaintiff was unable to make an earlier presentation for the reason that Lomza was seventy-five miles away, and " Germany was in Russia." Plaintiff testified that Mr. Szarkanski looked at the drafts and said " Hanover National Bank notified me not pay off (until) after the war." The drafts were not honored. The plaintiff was unable to return to the United States, because of lack of funds, until April, 1921, at which time he demanded payment of the drafts by the defendant. Payment was refused. The action is to recover the amount paid

defendant, with interest. The Statute of Limitations was not pleaded.

A vice-president and the manager of defendant's foreign department testified that the drafts were issued on Gebruder Szarkanski, at Lomza, a correspondent of the Commerce Bank in Warsaw, against the account of the Commerce Bank in Warsaw. The Commerce Bank in Warsaw was defendant's correspondent in Russia. The defendant advised Gebruder Szarkanski and the Commerce Bank in Warsaw that the drafts had been drawn. The letters of advice to Gerbruder Szarkanski, after describing the drafts, conclude, " which kindly honor to the debit of our account with Commerzbank in Warschau, Russia," and the letters of advice to the Commerce Bank in Russia request it to " kindly instruct them (Gebruder Szarkanski) to honor to the debit of our account with you." Letters were received by the defendant from the Warsaw Bank acknowledging receipt of the letters of advice and stating that the Hanover Bank had been debited with the respective items drawn on Lomza. The defendant offered evidence showing a debit of the two items in question, and tending to show that the defendant, at that time, had a balance with the Commerce Bank, at Warsaw, to meet these drafts. Evidence of the regular method of carrying on the business of foreign exchange was admitted. Bankers throughout the world establish accounts in the main centers of foreign countries. By arrangement with the bank at the main center, where their accounts are kept, drafts are drawn on that bank's correspondents throughout the country, " whether it be branches or some firm or banking institution in another city." These drafts, so drawn, are all debited to the account of the issuing bank on the books of that institution. At the same time, advice is sent to the bank on which the draft is drawn requesting it to honor the draft and debit the account against the central bank. The central bank either forwards actual currency to the bank on which the draft is drawn or establishes a credit with that bank, instructing it to honor the draft when presented. The defendant has not received back from the Warsaw Bank any part of the moneys debited against its account, and denies that it gave instructions either to the bank in Warsaw or to the bank in Lomza not to pay the drafts.

At the close of the case both sides moved for the direction of a verdict, and it was stipulated that the court may direct a verdict, in the absence of the jury, as though the jury were present. The court reserved decision on the motion and also on the motions to strike testimony from the records.

Section 111 of the Negotiable Instruments Law provides:

" Liability of drawer. The drawer by drawing the instrument * * * engages that on due presentment the instrument will be accepted or paid, or both, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder," etc.

The drafts in question are foreign bills of exchange (§ 213); and the same is true if they are called checks (§ 321).

Article XIV treats of protest and contains the following sections:

" Section 260. In what cases protest necessary. Where a foreign bill appearing on its face to be such is dishonored by non-acceptance, it must be duly protested for non-acceptance, and where such a bill which has not previously been dishonored by non-acceptance is dishonored by non-payment, it must be duly protested for non-payment. If it is not so protested, the drawer and endorsers are discharged * * *." See, also, § 189.

" Section 267. When protest dispensed with. Protest is dispensed with by any circumstances which would dispense with notice of dishonor. Delay in noting or protesting is excused when delay is caused by circumstances beyond the control of the holder and not imputable to his default, misconduct, or negligence. When the cause of delay ceases to operate, the bill must be noted or protested with reasonable diligence."

Article VIII treats of notice of dishonor and contains, among others, the following section:

" Section 185. When notice need not be given to drawer. Notice of dishonor is not required to be given to the drawer in either of the following cases: * * *

" 4. Where the drawer has no right to expect or require that the drawee or acceptor will honor the instrument;

" 5. Where the drawer has countermanded payment."

The fact that the drafts were not paid when presented is not disputed. The evidence justifies the conclusion that the drafts were presented within a reasonable time after they were received, having in mind the conditions then existing, due to the war. The defendant did not prove or attempt to prove that it had an account with the Gebruder Szarkanski Bank, at Lomza, or that it had funds on deposit to meet the drafts when presented. Plaintiff has testified that when the drafts were presented he was advised by the drawee that he had been instructed by the defendant not to honor the drafts until after the war. If this testimony be true, the plaintiff, under the statute, was under no obligation to give notice of dishonor to the drawer. The plaintiff does not rely upon this testimony alone, but claims, also, that since the defendant had no funds on deposit, he was relieved of the obligation of giving

notice by subdivision 4 of section 185 of the Negotiable Instruments Law. The defendant claims that the fact that it had sufficient funds with the bank at Warsaw to meet the obligation, and that it had instructed it to transfer funds or otherwise arrange to have the drafts paid, discharged its obligation to the plaintiff. The method of carrying on the business of foreign exchange is for the convenience of the bankers, and is not binding upon the plaintiff. There is no evidence that the plaintiff parted with his money with knowledge of this custom. The defendant, by drawing and selling the drafts to the plaintiff, engaged that the drafts would be paid upon due presentment. The sole question is whether or not notice of dishonor was dispensed with in this case. I find that it was. Whether or not the drawee advised the plaintiff that payment had been stopped by the defendant is not material if the defendant did not have funds in the hands of the drawee. I find that the defendant did not have funds on deposit to meet the drafts when presented. If drafts be dishonored by non-payment, compliance with a business arrangement with a third party, in this case the central bank, is not a defense, even though it be the usual way of doing business, in the absence of evidence that the purchaser was so advised at the time of the purchase. Motion by defendant to strike out the plaintiff's testimony of his conversation with the drawee at Lomza denied with exception to the defendant. Plaintiff's motion for the direction of a verdict is granted.

Judgment accordingly.